1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARA FAE ALEXANDER,<br><br>                    Plaintiff,<br><br>        v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                    Defendant. | Case No. 2:23-cv-1191-CSK<br><br>ORDER ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT<br><br>(ECF Nos. 11, 15) |

Plaintiff Tara Fae Alexander seeks judicial review of a final decision by Defendant Commissioner of Social Security denying an application for disability insurance benefits and supplemental security income.[1] In the summary judgment motion, Plaintiff contends the final decision of the Commissioner contains legal error and is not supported by substantial evidence. Plaintiff seeks a remand for further proceedings. The Commissioner opposes Plaintiff's motion, filed a cross-motion for summary judgment, and seeks affirmance.

For the reasons below, Plaintiff's motion is DENIED, the Commissioner's cross-motion is GRANTED, and the final decision of the Administrative Law Judge (ALJ) decision is AFFIRMED.

---

[1] This action was referred to the magistrate judge under Local Rule 302(c)(15) and proceeds on the consent of all parties. (ECF Nos. 6, 8, 9.)

1

1    **I.    SOCIAL SECURITY CASES:  FRAMEWORK & FIVE-STEP ANALYSIS**

2          The Social Security Act provides benefits for qualifying individuals unable to

3    "engage in any substantial gainful activity by reason of any medically determinable

4    physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(a). When an individual (the

5    "claimant") seeks Social Security disability benefits, the process for administratively

6    reviewing the request can consist of several stages, including: (1) an initial determination

7    by the Social Security Administration; (2) reconsideration; (3) a hearing before an

8    Administrative Law Judge ("ALJ"); and (4) review of the ALJ's determination by the

9    Social Security Appeals Council. 20 C.F.R. §§ 404.900(a), 416.1400(a).

10         At the hearing stage, the ALJ is to hear testimony from the claimant and other

11   witnesses, accept into evidence relevant documents, and issue a written decision based

12   on a preponderance of the evidence in the record. 20 C.F.R. §§ 404.929, 416.1429. In

13   evaluating a claimant's eligibility, the ALJ is to apply the following five-step analysis:

14         **Step One**: Is the claimant engaged in substantial gainful activity? If yes,
           the claimant is not disabled. If no, proceed to step two.

15         **Step Two**: Does the claimant have a "severe" impairment? If no, the
16         claimant is not disabled. If yes, proceed to step three.

           **Step Three**: Does the claimant's combination of impairments meet or
17         equal those listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (the "Listings")?
           If yes, the claimant is disabled. If no, proceed to step four.
18
           **Step Four**: Is the claimant capable of performing past relevant work? If
19         yes, the claimant is not disabled. If no, proceed to step five.

20         **Step Five**: Does the claimant have the residual functional capacity to
           perform any other work? If yes, the claimant is not disabled. If no, the
21         claimant is disabled.

22   *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995); 20 C.F.R. §§ 404.1520(a)(4),

23   416.920(a)(4). The burden of proof rests with the claimant through step four, and with

24   the Commissioner at step five. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020). If

25   the ALJ finds a claimant not disabled, and the Social Security Appeals Council declines

26   review, the ALJ's decision becomes the final decision of the Commissioner. *Brewes v.*

27   *Comm'r*, 682 F.3d 1157, 1161-62 (9th Cir. 2012) (noting the Appeals Council's denial of

28   review is a non-final agency action). At that point, the claimant may seek judicial review

of the Commissioner's final decision by a federal district court. 42 U.S.C. § 405(g).

The district court may enter a judgment affirming, modifying, or reversing the final decision of the Commissioner. *Id.* ("Sentence Four" of § 405(g)). In seeking judicial review, the plaintiff is responsible for raising points of error, and the Ninth Circuit has repeatedly admonished that the court cannot manufacture arguments for the plaintiff. *See Mata v. Colvin*, 2014 WL 5472784, at *4 (E.D. Cal, Oct. 28, 2014) (citing *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (stating that the court should "review only issues with are argued specifically and distinctly," and noting a party who fails to raise and explain a claim of error waives it).

A district court may reverse the Commissioner's denial of benefits only if the ALJ's decision contains legal error or is unsupported by substantial evidence. *Ford*, 950 F.3d. at 1154. Substantial evidence is "more than a mere scintilla" but "less than a preponderance," i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted). The court reviews evidence in the record that both supports and detracts from the ALJ's conclusion, but may not affirm on a ground upon which the ALJ did not rely. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). The ALJ is responsible for resolving issues of credibility, conflicts in testimony, and ambiguities in the record. *Ford*, 950 F.3d at 1154. The ALJ's decision must be upheld where the evidence is susceptible to more than one rational interpretation, or where any error is harmless. *Id.*

## II.    FACTUAL BACKGROUND AND ALJ'S FIVE-STEP ANALYSIS

On January 11, 2017, Plaintiff applied for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, alleging she has been disabled since January 1, 2012. Administrative Transcript ("AT") 204-17 (available at ECF No. 10). Plaintiff claimed disability due to scoliosis, depression, "high arches on feet," and being a "[s]low learner." *See* AT 65-66. Plaintiff's applications were denied initially and upon reconsideration; she sought review before an ALJ. AT 95-96, 125-26, 141. Plaintiff appeared with a representative at a June 14, 2018 hearing before

an ALJ, where Plaintiff testified about her impairments, Psychiatrist Dr. Richard Cohen testified concerning Plaintiff's mental limitations, and a vocational expert testified about hypothetical available jobs. AT 33-64. On October 26, 2018, the ALJ issued a decision finding Plaintiff was not disabled. AT 16-28.

Plaintiff filed a complaint in district court on September 16, 2019. AT 534-38. On March 10, 2021, the court remanded Plaintiff's case for further proceedings. *See* AT 546 (docket for *Alexander v Saul*, No. 1:19-cv-1208-SKO (E.D. Cal)). The court found the ALJ properly resolved conflicts with Plaintiff's symptom testimony and the medical opinions and properly crafted Plaintiff's residual functional capacity. *Alexander v. Saul*, 2021 U.S. Dist. LEXIS 46090, at \*22-52 (E.D. Cal. Mar. 10, 2021). However, the court held the ALJ erred at step five in finding Plaintiff could perform jobs requiring "simple, routine, or repetitive work," because this limitation is analogous to Level 2 Reasoning and Plaintiff was assigned a residual functional capacity limiting her to "simple, one and two-step tasks," which is Level 1 Reasoning under the DOT. *Id.* at \*52-53 (citing *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015); Dictionary of Occupational Titles (DOT), App. C, § II, available at 1991 WL 688702). On May 3, 2021, the Social Security Appeals Council remanded Plaintiff's case to an ALJ "for further proceedings consistent with the order of the court." AT 580.

On May 25, 2022, Plaintiff appeared with a representative at a hearing before another ALJ. AT 488-532. At this hearing, the ALJ accepted new evidence into the record, and Plaintiff briefly reconfirmed her symptom testimony from the prior hearing. AT 490-94. The ALJ then heard testimony from Dr. Nickerson Geneve, Doctor of Osteopathic Medicine (D.O.), who testified about Plaintiff's physical limitations, Psychologist Dr. Richard Anderson, who testified about Plaintiff's mental limitations, and a vocational expert, who testified about hypothetical available jobs in the national economy. AT 488-533. The ALJ then ordered an updated psychological consultative exam of Plaintiff, which was conducted by Psychologist Dr. Carol A. Johnson-Schroetlin on June 24, 2022. AT 532, 1359-68.

On November 1, 2022, the ALJ issued a decision finding Plaintiff was not disabled. AT 462-78. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since January 1, 2012. AT 464. At step two, the ALJ determined Plaintiff had the following severe impairments:  curvature of the thoracic and lumbar spines, mild spondylosis of the thoracic and lumbar spines, asthma, right carpal tunnel syndrome, major depressive disorder, anxiety disorder, and learning disability. AT 465. At step three, the ALJ found Plaintiff's combination of impairments did not meet or medically equal any Listing. AT 465 (citing 20 C.F.R Part 404, Subpart P, Appendix 1). Relevant here, the ALJ considered Listings 12.04 (depression), 12.06 (anxiety), and 12.11 (neurodevelopmental), examining the "Paragraph B" criteria for these Listings.[2] The ALJ found Plaintiff moderately limited in understanding, remembering, or applying information and in concentrating, persisting or maintaining pace; she also found Plaintiff mildly limited in interacting with others and in adapting or managing oneself. AT 465-67. In making these findings, the ALJ noted conflicts in the record between Plaintiff's testimony, the medical evidence, and the medical opinions in the record. *See id.*

The ALJ then found Plaintiff had the residual functional capacity to perform light work (20 C.F.R. §§ 404.1567(b), 416.967(b)), except that Plaintiff:

> [C]an lift and carry 20 pounds occasionally and 10 pounds frequently; can stand, walk, and sit six hours in an eight-hour workday; can occasionally climb stairs and ramps; can never climb ladders, ropes, and scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; can frequently handle, fine finger, and feel with the right upper extremity; can have occasional exposure to hazards (such as moving dangerous machinery and unprotected heights); should avoid concentrated exposure to cold temperature extremes, wetness, and pulmonary irritants[;] and can perform simple and repetitive tasks.

---

[2] "Paragraph B" lists four categories for evaluating how a claimant's mental disorders limit their functioning:  understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. To be found disabled under the Paragraph B categories, the mental disorder must result in an "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 Mental Disorders, sub. A.2.b.

AT 467-68. In crafting this residual functional capacity, the ALJ stated she considered Plaintiff's symptom testimony, including Plaintiff's disability reports from 2017 (AT 224-30, 257-65, 268-72, 277-82) and Plaintiff's testimony at the June 2018 hearing (AT 33-64). AT 468. The ALJ stated she also considered the objective medical evidence, other evidence, and medical opinions from February 2012 through March 2022. *Id.*

Evaluating the medical opinions on Plaintiff's physical limitations, the ALJ gave little weight to the opinion of Dr. Geneve, who opined (among other things) that Plaintiff was limited to lifting and carrying 10 pounds occasionally and 5 pounds frequently, could only stand and walk two hours in a workday, and might miss two days of work a month due to her pain. AT 474-75 (citing AT 504-05, 509). The ALJ found this opinion unsupported by the evidence cited by Dr. Geneve and inconsistent with the record. AT 475. Instead, the ALJ credited the opinions of two examining physicians (Dr. Dale H. Van Kirk, M.D., and Dr. Arundati Halappa, M.D.) and two state-agency doctors (Dr. W. Jackson, M.D., and Dr. E. Wong, M.D.) who reviewed Plaintiff's application at the initial and reconsideration stages. AT 474-75.

Evaluating the medical opinions on Plaintiff's mental limitations, the ALJ gave little weight to four opinions in the record. AT 474-75. Dr. Johnson-Schroetlin opined Plaintiff was mildly-to-moderately limited in her ability to maintain regular attendance, work consistently and without special supervision, complete a normal workday/week without psychiatric interruptions, accept instruction from supervisors, and interact with co-workers and the public; and was moderately limited in her ability to deal with work stress. AT 1368. Dr. Cohen opined Plaintiff had moderate-to-marked limitations in utilizing and applying information and in concentrating, persisting, and maintaining pace; and had moderate limitations in interacting with others and adapting and managing herself, the latter of which included a "marginal ability" to adapt to the stress of work. AT 57-58. Licensed Clinical Social Worker ("LCSW") Araceli Vigil, who treated Plaintiff in 2018, opined Plaintiff was moderately limited in her ability to receive and carry out instructions from supervisors and withstand the stress and pressure of a workday. AT 403. The ALJ

1  found each of these opinions unsupported by, and inconsistent with, the "relatively

2  unremarkable examination findings" in the record. AT 474. The ALJ also found Dr.

3  Johnson-Schroetlin's opinion internally inconsistent and Dr. Cohen's opinion too reliant

4  on Plaintiff's subjective statements. AT 474-75. Finally, the ALJ noted a May 6, 2021

5  treatment record from Dr. Barbara Huynh, who stated Plaintiff had "significant

6  impairment occupationally and socially," could only "do the bare minimum activities of

7  daily living," and "will not be able to perform meaningful work." AT 867. The ALJ gave

8  this opinion little weight because it spoke to the ultimate issue of disability and otherwise

9  did not apply Social Security law and regulations. AT 475. In contrast to these four

10 opinions, the ALJ favored the opinions of an examining psychologist (Dr. David

11 Pingitore, Ph.D) and the two state-agency doctors (Dr. G. Ikawa, M.D. and Dr. R.

12 Solomon, M.D.) who reviewed Plaintiff's application at the initial and reconsideration

13 stages. AT 474.

14      Based on the residual functional capacity, the ALJ determined at step four that

15 Plaintiff was incapable of performing past relevant work. AT 476. However, at step five,

16 the ALJ found Plaintiff capable of performing other jobs in the national economy,

17 including:  (i) office helper, light, SVP 2, reasoning level 2, with 10,516 jobs nationally;

18 (ii) housekeeping cleaner, light, reasoning level 1, with 194,495 jobs nationally; and

19 (iii) cafeteria attendant, light, SVP 2, reasoning level 2, with 22,125 jobs nationally.[3] AT

20 477. Thus, the ALJ found Plaintiff not disabled during the relevant period. AT 477.

21      On May 4, 2023, the Appeals Council rejected Plaintiff's appeal. AT 446-49.

22 Plaintiff filed this action requesting judicial review of the Commissioner's final decision,

23

24 [3]  "Light" in the ALJ's step-five determination references light work, as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b).

25      "SVP" is "specific vocational preparation," defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and

26 develop the facility needed for average performance in a specific job-worker situation." See DOT, App. C, § II, available at 1991 WL 688702.

27      Reasoning Levels in the Social Security context range from Level One (simplest) to Level Six (most complex). See Rounds v Comm'r, 807 F.3d 996, 1003 (9th Cir. 2015)

28 (citing DOT, App. C, § III, 1991 WL 688702).

1    and the parties filed cross-motions for summary judgment. (ECF Nos. 1, 11, 15.)

2    **III.    ISSUES PRESENTED FOR REVIEW**

3         Plaintiff contends the ALJ erred by failing to provide:  (A) specific and legitimate

4    reasons for discounting the medical opinions of Dr. Geneve, Dr. Johnson-Schroetlin, Dr.

5    Cohen, LCSW Vigil, and Dr. Huynh; and (B) clear and convincing reasons to discount

6    the more severe aspects of Plaintiff's symptom testimony. Plaintiff seeks a remand for

7    further proceedings. (ECF Nos. 11, 16.)

8         The Commissioner argues the ALJ:  (A) appropriately resolved conflicts in the

9    record regarding the medical opinions; and (B) properly rejected the more severe

10   aspects of Plaintiff's symptom testimony. Thus, the Commissioner contends the decision

11   as a whole is supported by substantial evidence and should be affirmed. (ECF No. 15.)

12   **IV.    DISCUSSION**

13        **A.    Medical Opinion Evidence**

14             1.    <u>Legal Standards</u>

15        For cases filed before March 27, 2017, the ALJ is required to consider a number

16   of factors in deciding the weight given to any medical opinion. These include the

17   examining relationship, the length of the treatment relationship and frequency of

18   examination, the amount of support detailed in the opinion, the consistency of the

19   opinion with the record, specialization of the medical professional, and any other factors

20   deemed relevant. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6). Additionally, in the

21   Ninth Circuit, the weight afforded a medical opinion depends on whether it was proffered

22   by a treating, examining, or non-examining professional. *Holohan v. Massanari*, 246 F.3d

23   1195, 1201-02 (9th Cir. 2001); *Lester*, 81 F.3d at 830. This also depends on whether the

24   opinion was offered from an acceptable or non-acceptable medical source. *Molina v.*

25   *Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

26        For acceptable medical sources in pre-March 27, 2017 cases, a treating

27   physician's opinion carries more weight than an examining physician's opinion, and an

28   examining physician's opinion carries more weight than a non-examining physician's

opinion. *Holohan*, 246 F.3d at 1202. However, if a treating professional's opinion is contradicted by an examining professional's opinion with support in the record, the ALJ is to resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. *Lester*, 81 F.3d at 831; *but see Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) ("Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record.").

In order to evaluate whether an ALJ properly rejected a contradicted opinion from an acceptable medical source, the court considers whether other contradictory opinions are in the record and whether clinical findings support the opinions. *Lester*, 81 F.3d at 831. Under the pre-March 27, 2017 framework, an ALJ must provide "specific and legitimate" reasons to reject the contradicted opinion of a treating or examining doctor. *Id.* at 830-31. An ALJ provides specific and legitimate reasons by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [an] interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751. However, the ALJ is not required to give a medical opinion any weight if it is conclusory or supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999).

In contrast to acceptable medical sources, the evaluative framework differs for opinions from "medical sources who are not acceptable medical sources," such as nurse practitioners, physician's assistants, chiropractors, audiologists, therapists, and licensed clinical social workers. 20 C.F.R. §§ 404.1527(f), 416.927(f); *see also Molina*, 674 F.3d at 1111. Even though these sources are afforded less weight in Social Security cases filed before March 27, 2017, the ALJ is still required to consider the same factors as with acceptable medical sources. *See* 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6); *see also* Soc. Sec. Ruling (SSR) 06-03p, available at 2006 WL 2329939, at *3 (noting these

professionals "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists," and so their opinions are still relevant in determining a claimant's severe impairments and ability to work). However, an ALJ need only articulate reasons "germane to the witness" when rejecting these sources' opinions. *Molina*, 674 F.3d at 1111, *see also Delegans v. Berryhill*, 766 F. App'x 477, 480 (9th Cir. 2019) (in a case filed prior to March 27, 2017, finding no error in the ALJ's rejection of testimony from a licensed clinical social worker because the ALJ provided germane reasons for discounting the opinion).

Finally, the ALJ is not required to give any special significance to a medical source's statement that a claimant is "disabled" or "unable to work," as this is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); *see also Boardman v. Astrue*, 286 F. App'x 397, 399 (9th Cir. 2008) (physician's opinion that a claimant is "disabled" is "irrelevant at best" and "not entitled to special significance").

### 2.    Plaintiff's Physical Limitations

Plaintiff's first point of error focuses on the ALJ's evaluation of the opinion from Dr. Nickerson Geneve, D.O., stated at the May 25, 2022 administrative hearing. AT 499-509. Because Dr. Geneve's opinion was contradicted by four other medical opinions, each with their own support in the record, the Court examines whether the ALJ provided "specific and legitimate" reasons to reject Dr. Geneve's opined limitations. *See Lester*, 81 F.3d at 831. The Court focuses on the lift/carry, sit/stand, and attendance limitations, as these are the only limitations opined by Dr. Geneve that differed from what was adopted in the residual functional capacity.

The ALJ gave "significant weight" to the opinions of two examining doctors (Dr. Van Kirk and Dr. Halappa) and two reviewing physicians (Drs. Jackson and Wong), each of whom opined lift/carry, sit/stand, and no attendance limitations that aligned with the residual functional capacity (six-hour stand/walk limitation, lift/carry limits of 20 pounds occasionally and 10 pounds frequently). *See* AT 474. This included the opinion of Dr. Van Kirk, which the ALJ found supported by the doctor's May 25, 2016 examination and

1   consistent with other evidence in the record "as discussed above." AT 474 (citing AT

2   320-24). This also included the May 29, 2018 opinion of Dr. Halappa, which the ALJ

3   found supported and consistent with the doctor's "relatively unremarkable findings on

4   examination . . . as previously discussed." AT 474 (citing AT 402). As for the opinions of

5   Drs. Jackson and Wong, the ALJ found them supported by Dr. Kirk's exam and

6   consistent with the record "as described above." AT 474 (citing AT 73-75 and 104-06).

7          Preceding the ALJ's discussion of these medical opinions, the ALJ extensively

8   reviewed and summarized the medical evidence from 2012 to 2022. AT 468-75. This

9   included noting Plaintiff was "ambulatory without assistance" after a November 2013

10  emergency room visit and otherwise had no records of medical appointments until May

11  2016. AT 468-69 (citing AT 307). At a May 2016 exam, Dr. Van Kirk noted Plaintiff had

12  "no gait abnormalities, no assistive device, full cervical range of motion without pain or

13  difficulty, a slight scoliotic curve apex to the left from the mid-thoracic area to the mid-

14  lumbar spine area, pain in the mid-lumbar spine area radiating to the waist area and into

15  the buttocks, decreased range of motion of the dorsolumbar spine[, and] full range of

16  motion of the hips, knees, ankles and feet, shoulders, elbows, wrists, and fingers and

17  thumbs (without pain or difficulty)." AT 469 (citing AT 321-22). Dr. Halappa's January

18  2017 treatment notes indicate Plaintiff had some tenderness and moderate pain in the

19  spine, but normal gait and reflexes. AT 469 (citing AT 327). The ALJ noted x-rays

20  confirmed the diagnoses of kyphosis, mild degenerative spondylosis, scoliosis, and facet

21  arthropathy of the spine at L5-S1. AT 470 (citing AT 340-41).

22         From there, the ALJ cited medical records from 2017-2018 showing a varied

23  picture of Plaintiff's physical limitations. AT 470 (citing AT 378 (attendance at physical

24  therapy in March 2017), AT 360 (March 2017 exam showing reduced range of motion in

25  the spine but normal gate), AT 366 (March 2017 x-ray showing stable scoliosis and facet

26  arthropathy), AT 406 (October 2017 record showing muscle spasms in the back, but

27  normal balance and gait), AT 422 (April 2018 findings of excessive lordosis and

28  scoliosis, limited lumbar range of motion, but normal strength and negative straight leg

raising)). The ALJ also cited records from late 2018 through 2022 showing a similarly varied picture. AT 471-73 (citing AT 1220-22 (November 2018 exam showing abnormal lumbar range of motion, positive straight leg raising, sitting and supine, bilaterally, positive slump tests bilaterally, 4/5 strength in ankle dorsiflexion and hip abduction bilaterally but otherwise 5/5 strength, and tenderness to palpation), AT 1130 (February 2019 MRI showing some deteriorating of the spine but similar mild findings as previous), AT 1086 (September 2019 severely reduced thoracic and lumbar range of motion but normal gait), AT 1153 (December 2020 abnormal lumbar range of motion and inconsistent ankle and hip strength, but negative straight leg raising, normal gait, reflexes, and sensation, and "otherwise 5/5 strength throughout"), AT 978 (January 2021 normal balance and gait), AT 1147 (March 2021 decreased lumbar range of motion and tenderness, but normal reflexes and sensation and 5/5 strength in legs), AT 893 (June 2021 treatment record showing tenderness and scoliosis in spine but no range of motion issues), AT 1344 (March 2022 physical therapy for back pain)).

In contrast to the medical opinions given "significant weight" by the ALJ, Dr. Geneve opined that Plaintiff could lift/carry 10 pounds occasionally and 5 pounds frequently, stand/walk for two hours, and might miss two days a month due to her pain. AT 504-05, 509. The ALJ gave Dr. Geneve's opinion "little weight," finding the lift/carry, sit/stand, and attendance limitations "not supported by the evidence upon which [the doctor] relied (such as the examination and treatment records explicitly referenced), [and not] consistent with the other evidence in the record (including the absence of persistent and significant abnormalities on examination), as discussed above." AT 475. Plaintiff contends this evaluation of Dr. Geneve's opinion is conclusory, fails to elaborate the ALJ's rationale, and fails to cite supporting evidence. (ECF No. 11 at 17.) However, as the Court has just noted, the ALJ provided a "detailed and thorough summary of the facts and conflicting clinical evidence" prior to evaluating the medical opinions. *See Magallanes*, 881 F.2d at 751. The ALJ sufficiently connected this evidence to her findings on Dr. Geneve's opinion by citing the "examination and treatment records [Dr.

Geneve] explicitly referenced" and the "other evidence in the record (including the absence of persistent and significant abnormalities on examination), as discussed above." AT 475. The ALJ was not required to re-summarize or repeat her seven-page summary of the evidence in the section of the ALJ's decision weighing Dr. Geneve's opinion. *See Magallanes*, 881 F.2d at 751.

Plaintiff also contends there is other medical evidence in the record that supports Dr. Geneve's more restrictive residual functional capacity. The ALJ did not ignore this medical evidence, and in fact cited to some of the same records Plaintiff highlights. (ECF No. 11 at 16-17.) Thus, the Court finds the ALJ's decision did not "cherry pick" the record by ignoring probative evidence. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014). Instead, the decision demonstrates the ALJ fulfilled her duty to address conflicts in the record; the Court has no authority to reweigh Plaintiff's cited evidence to arrive at a different conclusion. *See Ford*, 950 F.3d at 1154.

In sum, the decision demonstrates that while Plaintiff's severe physical impairments cause her to be limited in her ability to sit, stand, lift, and carry, they were not as limiting as Dr. Geneve opined. The ALJ provided a detailed and thorough summary of the supporting evidence, gave "significant weight" to the opinions of Dr. Van Kirk, Dr. Halappa, and the two state-agency consulting physicians because these opinions were consistent with the evidence, and found Dr. Geneve's opinion inconsistent with the same evidence. The ALJ's discounting of Dr. Geneve's opinion meets the Ninth Circuit's "specific and legitimate reasons" test. *See Magallanes*, 881 F.2d at 751 (stating specific and legitimate reasons are given by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [an] interpretation thereof, and making findings"); *Tonapetyan*, 242 F.3d at 1149 (reminding that a contrary opinion of a non-examining medical expert can be included in the rationale for discounting a treating or examining physician's opinion if "consistent with other independent evidence in the record"); *see also* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (allowing an ALJ to give a medical opinion less weight if it is less consistent with the record as a whole).

1 ### 3. Plaintiff's Mental Limitations

2 Plaintiff's next four points of error focus on the ALJ's findings on Plaintiff's mental

3 limitations. The ALJ found Plaintiff had the severe mental impairments of "major

4 depressive disorder, anxiety disorder, and learning disability." AT 464. The ALJ found

5 Plaintiff moderately limited in the Paragraph B categories of understanding,

6 remembering, or applying information and concentrating, persisting or maintaining pace,

7 and mildly limited in the Paragraph B categories of interacting with others and adapting

8 or managing oneself. AT 465-67. Because Plaintiff did not have two Paragraph B

9 categories with "marked" limitations, or one category with "extreme" limitations, the ALJ

10 found Plaintiff did not meet any listing at step three, including Listing 12.06 (anxiety). AT

11 464-65. At the residual functional capacity stage, the only mental limitation the ALJ

12 assigned was one to "simple and repetitive tasks," which is similar to Level 2 Reasoning.

13 AT 468. The ALJ then found Plaintiff could perform jobs in the national economy

14 requiring, among other things, Levels 1 and 2 reasoning.

15 In making these findings, the ALJ noted the many conflicts in the record

16 concerning Plaintiff's mental impairments. AT 465-76. This included Plaintiff's January

17 2017 exam with LCSW Vigil, who noted Plaintiff's impaired ability to make decisions but

18 who otherwise reported normal mental exam results. AT 470 (citing AT 337-38). This

19 also included the ALJ's citation to a November 2017 treatment record showing anxiety

20 but normal affect (AT 406); March 2018 records noting depression, anxiety, and an

21 impaired ability to make decisions, but normal cognition and average intelligence (AT

22 417); a July 2020 treatment record noting anxiety but otherwise appropriate mood, no

23 memory deficits, normal insight and judgment, normal attention and concentration (AT

24 1009); a May 2021 treatment record as mentally "stable" (AT 883); a September 2021

25 treatment note with normal findings (AT 1162); exams from January and April 2022

26 showing "okay" mood and otherwise normal thought processes, unremarkable memory,

27 and intact attention, concentration, insight, judgment, and impulse control (AT 1274, AT

28 1308). Finally, this included results from Dr. Johnson-Schroetlin's June 2022 exam,

which noted Plaintiff's slightly impaired attention, concentration, and knowledge; impaired recent memory, insight, and judgment; adequate ability to abstract; but otherwise normal presentation of her mental faculties. AT 473 (citing AT 1363-64).

Ultimately, the ALJ relied on the opinions of one examining psychologist and two reviewing psychologists. This included the opinion from Dr. Pingitore, who performed a psychological consultative examination of Plaintiff in March 2016, and the opinions of the two state-agency doctors who reviewed Plaintiff's application at the initial and reconsideration stages. AT 475 (citing AT 72-77, 103-07, 315-17). The ALJ assigned these opinions "significant weight," finding Dr. Pingitore's opinion "supported by his relatively unremarkable findings on examination and consistent with the other evidence in the record, as discussed earlier," and finding the two state-agency doctors' opinions "supported by the evidence upon which [they] relied (such as Dr. Pingitore's findings and opinions and the treatment records and claimant activities referenced), as previously described." AT 475. The ALJ crafted Plaintiff's residual functional capacity in alignment with these doctors' recommendations with one exception:  Dr. Pingitore assigned a mental limitation of one- or two-step instructions (i.e., Reasoning Level 1), but the ALJ adopted the two state-agency doctors' limitation of simple and repetitive tasks (i.e., Reasoning Level 2). *See id.*

Set against this backdrop, the Court examines whether the ALJ appropriately resolved the conflicts in the medical opinions from:  (a) Dr. Johnson-Schroetlin, (b) Dr. Cohen, (c) LCSW Vigil, and (d) Dr. Huynh.

a.      Psychologist Dr. Johnson-Schroetlin

On June 24, 2022, Plaintiff attended a consultative examination performed by psychologist Dr. Carol A. Johnson-Schroetlin, who opined Plaintiff was moderately and mildly impaired in some areas and not at all in others. AT 1359-60, 1368. Relevant here, Dr. Johnson-Schroetlin found Plaintiff mildly-to-moderately limited in her ability to maintain regular attendance, work consistently and without special supervision, complete a normal workday/week without psychiatric interruptions, accept instruction from

supervisors, and interact with co-workers and the public; and moderately limited in her ability to deal with work stress. AT 1368. However, the ALJ gave "little weight" to this opinion, finding it "internally inconsistent, not fully supported by her relatively unremarkable findings on examination, and not consistent with the other evidence in the record, as discussed in detail above." AT 474.

Plaintiff contends this rationale is neither specific nor legitimate, citing Dr. Johnson-Schroetlin's exam results showing Plaintiff's low scores in comprehension, reasoning, memory, and IQ. *See* AT 1364-66. Plaintiff also points to other treatment records where she exhibited behaviors stemming from her anxiety and depression. (*See* ECF No. 11 at 23 (citing AT 337-38, 354, 409, 417, 434, 1283, 1291).) However, as noted by the Court above, the ALJ did not ignore this evidence cited by Plaintiff. In fact, these and similar records were the basis for the ALJ's assignment of the mild and moderate limitations at step three and the limitation in the residual functional capacity to simple and repetitive tasks. AT 468. Thus, this is not a case of the ALJ "cherry picking" the record. *See Ghanim*, 763 F.3d at 116 (finding error where the ALJ's decision did not account for record "as a whole," but rather relied on "cherry-picked" evidence).

Plaintiff also contends the ALJ's conclusion on Dr. Johnson-Schroetlin's opinion is conclusory and unsupported. However, as described above, the ALJ provided a "detailed and thorough summary of the facts and conflicting clinical evidence" prior to evaluating Dr. Johnson-Schroetlin's opinion. *See Magallanes*, 881 F.2d at 751. The ALJ sufficiently connected this evidence to her findings on Dr. Johnson-Schroetlin's opinion by stating it was "not consistent with the other evidence in the record, as discussed in detail above." AT 475. The ALJ was not required to re-summarize or repeat her seven-page summary of the evidence in the paragraph giving Dr. Johnson-Schroetlin's opinion little weight. *See Magallanes*, 881 F.2d at 751.

Finally, Plaintiff disputes the ALJ's conclusion that Dr. Johnson-Schroetlin's opinion was internally consistent. However, a review of the doctor's two reports submitted on June 24, 2022 shows this to be the case for many of the Paragraph B

16

categories. For example, Dr. Johnson-Schroetlin opined in her written report that Plaintiff was moderately limited in understanding, remembering, or applying information, but checked boxes on a parallel form opining Plaintiff had no impairments with understanding, remembering, or carrying out simple instructions. *Compare* AT 1359, *with* AT 1368. Similarly, Dr. Johnson-Schroetlin wrote that Plaintiff was mildly-to-moderately limited in her ability to interact with others but checked the "none" boxes for this category, and wrote that Plaintiff had moderate limitations in her ability to deal with work stress but checked the mild box for "[r]espond appropriately to usual work situations and to changes in a routine work setting." *See id.* Plaintiff is correct that other categories from these two documents did not conflict, but the ALJ was within her authority to resolve the internal inconsistencies present in Dr. Johnson-Schroetlin's reports by comparing those limitations with the evidence in the record. *See Ford*, 950 F.3d at 1154.

### b.    Psychologist Dr. Richard Cohen

At the June 14, 2018 hearing, Dr. Richard Cohen stated he reviewed Plaintiff's medical records available at the time (Exhibits 1A-13F) but did not examine Plaintiff personally. AT 56. Dr. Cohen opined Plaintiff had moderate-to-marked limitations in utilizing and applying information and in concentrating, persisting, and maintaining pace; and had moderate limitations in interacting with others and adapting and managing herself, the latter of which included a "marginal ability" to adapt to the stress of work. AT 57-58. The ALJ gave "little weight" to Dr Cohen's opinion, finding it "relie[d] on the claimant's subjective statements," was "not supported by the evidence upon which he relied (such as Dr. Pingitore's examination findings and opinion, the state-agency doctors' opinions, or the treatment records cited)," and was "inconsistent with the other evidence in the record (reflecting relatively unremarkable findings on mental status examination throughout the period in question), as described above." AT 475.

Plaintiff contends this rationale is neither specific nor legitimate, citing medical records consistent with Dr. Cohen's report that were available in 2018, as well as later-generated records like Dr. Johnson-Schroetlin's 2022 exam results. (ECF No. 11 at 20.)

1    Much for the same reasons discussed above regarding Dr. Johnson-Schroetlin's opinion,

2    the Court rejects Plaintiff's argument here. The ALJ did not ignore probative evidence

3    supporting Plaintiff's arguments, as this evidence was the basis for the ALJ's assignment

4    of the mild and moderate limitations at step three and the limitation to simple and

5    repetitive tasks in the residual functional capacity. *See Ghanim*, 763 F.3d at 116. The

6    ALJ provided a "detailed and thorough summary of the facts and conflicting clinical

7    evidence" prior to evaluating Dr. Cohen's opinion, as described by the Court above. *See*

8    *Magallanes*, 881 F.2d at 751. The ALJ sufficiently connected this evidence to her

9    findings on Dr. Cohen's opinion by stating it was "inconsistent with the other evidence in

10   the record (reflecting relatively unremarkable findings on mental status examination

11   throughout the period in question), as described above." AT 475. The ALJ was not

12   required to re-summarize or repeat her seven-page summary of the evidence in the

13   paragraph giving Dr. Cohen's opinion little weight. *See Magallanes*, 881 F.2d at 751.

14        Additionally, Plaintiff argues the ALJ's rationale is flawed because Dr. Cohen

15   never indicated he relied on Plaintiff's symptom statements, and even if he did,

16   psychiatric evaluations by their nature rely on self-reports. (ECF No. 11 at 19 (citing

17   *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) ("Psychiatric evaluations may

18   appear subjective, especially compared to evaluation in other medical fields. Diagnoses

19   will always depend in part on the patient's self-report, as well as on the clinician's

20   observations of the patient. But such is the nature of psychiatry.")).) While true Dr.

21   Cohen did not explicitly describe Plaintiff's self-reports during his testimony, he generally

22   reported he had reviewed the record between Exhibits 1A-13F, which were the records

23   available at the time of the 2018 hearing. AT 55-56. A review of these records indicates

24   some were, in fact, based on Plaintiff's self-reports. For example, Dr. Cohen referenced

25   a record from January 30, 2017 where Plaintiff scored a low score of 19 on a PHQ-9,

26   which rates for depression. AT 57 (citing AT 336); *see also Lim v. Saul*, 2020 U.S. Dist.

27   LEXIS 89815, at *25 (N.D. Cal. May 20, 2020) (noting the PHQ-9 questionnaire reflects

28   a patient's reported self-assessment). Dr. Cohen also explicitly noted Plaintiff's

experience applying for a job, which was relayed to Dr. Pingitore during the 2016 psychological consultative exam Dr. Pingitore performed. *See* AT 57, 316. Thus, the ALJ was not incorrect to note that some of Dr. Cohen's opinion was based on Plaintiff's self-reporting. Further, ALJs are permitted to give less weight to those portions of a medical source's opinion that are based on the plaintiff's subjective reports, where those reports were also properly discounted by the ALJ. *See Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) (holding that physician's opinion may be disregarded if it is based on subjective complaints that were properly discredited). Here, the ALJ noted Dr. Cohen's partial reliance on Plaintiff's self-reports in order to resolve the conflict between Dr. Cohen's opined limitations and those of, for example, Dr. Pingitore. AT 475. The Court finds no error in the ALJ's conclusions, as these conflicts are for the ALJ to resolve. *See Ford*, 950 F.3d at 1154; *see also Andrews*, 53 F.3d at 1041 (reminding that the opinion of an examining physician is often afforded greater weight than that of a non-examining physician). The Court has no authority to reweigh the evidence to arrive at a different conclusion. *See Ford*, 950 F.3d at 1154.

c.      Licensed Clinical Social Worker Vigil

On June 5, 2018, LCSW Vigil opined Plaintiff was moderately limited in her ability to maintain concentration and attention; withstand the stress and pressures associated with working; understand, remember, and carry out simple and complex instructions; and receive and carry out instructions from supervisors; and mildly limited in her ability to deal with the public and relate and interact with co-workers. AT 403. However, the ALJ gave "little weight" to this opinion, finding it "not supported by the treating social worker's relatively unremarkable examination findings (such as preoccupations and ruminations generally but no other abnormalities), as detailed above, or consistent with the other evidence in the record (such as Dr. Pingitore's findings and opinion and the state-agency opinions), as discussed above." AT 474. Like with Dr. Johnson-Schroetlin and Dr. Cohen, Plaintiff contends this rationale is neither specific nor legitimate because it is conclusory, fails to cite supporting evidence, and other evidence in the record supported

1   LCSW Vigil's limitations. (ECF No. 11 at 27-29.)

2   First, Plaintiff is incorrect that the ALJ was required to provide specific and

3   legitimate reasons for discounting LCSW Vigil's opinion. Plaintiff's claims for benefits

4   were filed prior to March 27, 2017, and so the regulations and associated case law

5   regarding acceptable and non-acceptable medical sources apply to Plaintiff's case. *See*

6   *Molina*, 674 F.3d at 1111; *Delegans*, 766 F. App'x at 480. Thus, while the ALJ was

7   required to "consider" LCSW Vigil's opinion, she only needed to provide "germane"

8   reasons to discount it. 20 C.F.R. §§ 404.1527(f), 416.927(f); *Molina*, 674 F.3d at 1111.

9   Second, while the ALJ gave LCSW Vigil's opinion "little weight," a comparison of

10  the social worker's opinion to the ALJ's Paragraph B findings shows there is little

11  difference between them. LCSW Vigil opined Plaintiff was moderately limited in

12  maintaining concentration and attention, and in understanding, remembering, and

13  carrying out simple and complex instructions, and mildly limited in dealing with the public

14  and relating and interacting with co-workers. AT 403. The ALJ assigned these very

15  limitations at step three. AT 465-67. The only differences between LCSW Vigil's opinion

16  and the Paragraph B categories were in Plaintiff's ability to withstand the stress and

17  pressures associated with working, and to receive and carry out instructions from

18  supervisors. *Compare* AT 403 (LCSW Vigil's assignments of "moderate" limitations in

19  these two categories), *with* AT 466-67 (ALJ's assignment of "mild" limitations in Plaintiff's

20  ability to adapt and manage herself and to interact with others).

21  Against this backdrop, the Court finds no error in the ALJ's resolution of the

22  conflicting portions of LCSW Vigil's opinion, similar to the Court's analysis of Dr.

23  Johnson-Schroetlin's and Dr. Cohen's opinions. The ALJ noted LCSW's Vigil's "relatively

24  unremarkable examination findings" and inconsistency of Vigil's opinion with other

25  evidence "such as Dr. Pingitore's findings and opinion and the state-agency opinions),

26  as discussed above." AT 474. This rationale, accompanied by the ALJ's extensive

27  discussion of the probative evidence in the preceding seven pages, is sufficiently

28  germane to LCSW Vigil's opinion, and thus the ALJ did not err in discounting it. 20

20

C.F.R. §§ 404.1527(f), 416.927(f); *Molina*, 674 F.3d at 1111. Further, the ALJ was allowed to reject Vigil's opinion because it was brief, conclusory, and inadequately supported by clinical findings. *Meanel*, 172 F.3d at 1114. Nor did the ALJ ignore probative evidence when resolving the conflict between LCSW Vigil's opinion and the other evidence in the record. *See Ghanim*, 763 F.3d at 116. In fact, the evidence cited by Plaintiff was the basis for the ALJ's assignment of the mild and moderate limitations at step three and the limitation to simple and repetitive tasks in the residual functional capacity.

d.     <u>Dr. Barbara Huynh, D.O.,</u>

After a telemedicine appointment on May 3, 2021, Dr. Huynh completed a form for Stanislaus County requesting information "needed to evaluate eligibility for General Assistance." AT 867; *see also* AT 881. On this form, Dr. Huynh noted Plaintiff's diagnoses of depression, anxiety, and unspecified intellectual disabilities, checking yes boxes under permanent disability and inability to work full or part time. *Id.* Under "Limitations," Dr. Huynh wrote Plaintiff "has significant impairment occupationally and socially," can only do the bare minimum activities of daily living," and "will not be able to perform meaningful work." *Id.* The ALJ gave "little weight" to this opinion, finding it "infringe[d] upon the discretion of the Commissioner and [did] not explicitly apply the Social Security laws and regulations that govern disability." AT 475.

Plaintiff contends this rationale is neither specific nor legitimate, arguing that because Dr. Huynh's opinion relates to the nature and severity of Plaintiff's mental impairments, the ALJ should have articulated a rationale for why it was rejected. The Court disagrees. First, the ALJ was not required to comment on any statement that Plaintiff was disabled, as the ultimate issue of disability is reserved to the Commissioner. 20 C.F.R. § 404.1527(d); *Boardman*, 286 F. App'x at 399. Second, the ALJ is permitted to give opinions little to no weight if they are conclusory or supported by minimal clinical findings. *See Meanel*, 172 F.3d at 1114. Dr. Huynh's opinions that Plaintiff "can only do the bare minimum activities of daily living" and has "significant impairment occupationally

1  and socially" are just that: conclusory and unsupported by any reference to evidence in

2  the record. To the extent these statements opine on what Plaintiff "can still do despite

3  impairment(s)," 20 C.F.R. § 404.1427(a)(1), the ALJ's assignment of "little weight" is

4  supported by substantial evidence for the same reasons stated in the ALJ's evaluation of

5  the opinions of Drs. Johnson-Schroetlin and Cohen. *See Magallanes*, 881 F.2d at 751.

6  The Court finds no reversible error in the ALJ's treatment of Dr. Huynh's statement of

7  disability. *See Treichler v. Comm'r*, 775 F.3d 1090, 1099 (9th Cir. 2014) (reminding that

8  courts should not reverse if "the agency's path may reasonably be discerned," even if

9  explained with "less-than-ideal clarity").

10      **B.      Subjective Symptom Testimony**

11      Plaintiff's last point of error focuses on her assertions that her impairments

12  severely affected her ability to "lift, squat, bend, stand, reach, walk, kneel, remember,

13  complete tasks, concentrate, understand, and follow instructions." (ECF No. 11 at 9.)

14  Plaintiff contends the ALJ erred by only relying on the medical evidence when analyzing

15  Plaintiff's symptom statements, by failing to explain why the more severe aspects of her

16  testimony were rejected, and by ignoring other medical evidence in the record supports

17  her testimony. (*Id.* at 9-15.)

18          1.      Legal Standards

19      A claimant's statements of subjective symptoms alone are insufficient grounds to

20  establish disability. 20 C.F.R §§ 404.1529(a), 416.929(a). If an ALJ was required to

21  believe every allegation of pain or impairment, disability benefits would run afoul of the

22  Social Security Act and its purpose. *Treichler v. Comm'r,* 775 F.3d 1090, 1106 (9th Cir.

23  2014). In evaluating the extent to which an ALJ must credit the claimant's report of their

24  symptoms, the Ninth Circuit has stated:

25          First, the ALJ must determine whether the claimant has presented
            objective medical evidence of an underlying impairment which could
26          reasonably be expected to produce the pain or other symptoms
            alleged. In this analysis, the claimant is not required to show that her
27          impairment could reasonably be expected to cause the severity of the
            symptom she has alleged; she need only show that it could
28          reasonably have caused some degree of the symptom. Nor must a

1
claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.

2

3
If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

4

5

6   *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017) (quotations omitted). The ALJ's

7   reasons for discounting or rejecting a claimant's subjective symptom testimony must be

8   sufficiently specific to allow a reviewing court to conclude the adjudicator did not

9   arbitrarily discredit a claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493

10  (9th Cir. 2015) (quotations omitted). Examples of "specific, clear and convincing

11  reasons" for discounting or rejecting a claimant's subjective symptom testimony include:

12  prescription of conservative treatment, *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir.

13  2007); inconsistencies between the plaintiff's testimony and conduct (including daily

14  activities), *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005); whether the alleged

15  symptoms are consistent with the medical evidence of record, *Rollins v. Massanari*, 261

16  F.3d 853, 857 (9th Cir. 2001); an unexplained or inadequately explained failure to follow

17  a prescribed course of treatment, *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991);

18  or prior inconsistent statements by the plaintiff, *Fair v. Bowen*, 885 F.2d 597, 604 n. 5

19  (9th Cir. 1989). A lack of corroborating, objective medical evidence alone is insufficient

20  grounds for an ALJ to discount subjective symptoms; however, it is a factor the ALJ may

21  consider. *Rollins*, 261 F.3d at 857 (citing 20 C.F.R § 404.1529(c)(2)).

22                  2.      Symptom Testimony re: Physical Impairments

23          Regarding Plaintiff's statements that she had disabling physical pain such that

24  she could not work, the ALJ began by summarizing Plaintiff's statements from her

25  disability reports and at the 2018 hearing. AT 468. In Plaintiff's 2017 disability reports,

26  she stated she "cannot do any of the things checked" and checked boxes for lifting,

27  squatting, bending, standing, reaching, walking, and kneeling. AT 262. Plaintiff also

28  stated she could not walk a block and had to rest 20-30 minutes between walks. AT 262-

63. At the 2018 hearing, Plaintiff stated she could only sit and stand for fifteen minutes at a time, had to use a (non-prescribed) cane to walk, and had to lie down more than fifty percent of the day. AT 42-54. The ALJ concluded the symptoms Plaintiff alleged could be caused by her physical impairments, but "the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the above reasons."  AT 476. Specifically, the ALJ found Plaintiff's "allegations of generally disabling symptoms and limitations" to be unsubstantiated by "the evidence in the record, including the imaging studies, the consultative examinations, the treatment history . . ., [her] activities[,] the medical opinions . . ., [and] the evidence of non-compliance with treatment, as previously discussed." *Id.* The ALJ also noted Plaintiff did not "describe side effects from medication." AT 468 (citing AT 264, 271, 280).

First, the ALJ properly noted the conflicts between Plaintiff's testimony and the objective medical evidence "as discussed." AT 468-76. The ALJ noted Plaintiff was "ambulatory without assistance" in November 2013 (AT 307) and had no gait abnormalities, had full cervical range of motion without pain or difficulty, and had full range of motion of the hips, knees, ankles, feet, shoulders, elbows, wrists, fingers and thumbs (without pain or difficulty) in May 2016 (AT 321-22). The ALJ also noted a number of other "normal" findings, such as her stable scoliosis in March 2017 (AT 366); normal gait and reflexes in January, March, and October 2017, September 2019, and January 2021 (AT 327, 360, 978, 1086); normal strength and negative straight leg raising in April 2018 (AT 422); negative straight leg raising, normal gait, reflexes, and sensation, and "otherwise 5/5 strength throughout" in December 2020 (AT 1153); normal reflexes and sensation and 5/5 strength in legs in March 2021 (AT 1147); and no range of motion issues in June 2021 (AT 893). This evidence of normal or mild impairments contradicts Plaintiff's statements that she could not "do any of the things checked," including lifting, squatting, bending, standing, reaching, kneeling, walking more than a block at a time. AT 262-63. This evidence also contradicts Plaintiff's statements at the

24

2018 hearing that she could only sit and stand for fifteen minutes at a time, had to use a cane to walk, and has to lie down more than fifty percent of the day. AT 42-54. The ALJ could consider the objective medical evidence in resolving conflicts in Plaintiff's testimony, and did not err in finding Plaintiff's own stated extreme limitations contradicted by the mostly normal medical findings in the record. *See Rollins*, 261 F.3d at 857; *see also Marshall v. Saul*, 830 F. App'x 179, 181 (9th Cir. 2020) (finding clear and convincing reasons to reject the plaintiff's symptom testimony where there was a "disjunction between his statements that [he] could not walk and medical evidence showing that his gait was normal"). The ALJ connected this evidence to her conclusions "as discussed," and was not required to re-summarize this evidence in the paragraph where she stated her conclusions on Plaintiff's symptom testimony. *See Treichler*, 775 F.3d at 1099 (reminding that courts should not reverse if "the agency's path may reasonably be discerned," even if explained with "less-than-ideal clarity").

Plaintiff contends other evidence supports the more severe aspects of her symptom testimony, including medical records showing she suffered from back spasms, reduced range of motion, facet arthropathy, spinal deterioration, and inconsistent ankle/hip strength. *See* AT 360, 366, 406, 422, 471-73, 893, 1086, 1130, 1086, 1153, 1147. However, as discussed above in the Court's analysis of Dr. Geneve's opinion, the ALJ noted much of this other evidence when resolving the conflicts between Plaintiff's testimony and the record. *See* AT 470-73. Dr. Van Kirk, Dr. Halappa, and the two state-agency physicians reviewed many of these records and did not opine limitations as severe as Plaintiff asserted. *See* AT 73-75, 104-06, 321-22, 327, 340-41. The ALJ considered the whole of this record in crafting Plaintiff's physical limitations in the residual functional capacity. *See Ghanim*, 763 F.3d at 116.

In addition to relying on the medical evidence, the ALJ found Plaintiff was noncompliant with conservative treatments "as previously discussed." AT 476. The Court finds the ALJ sufficiently cited evidence in the decision to support this conclusion. For example, the ALJ noted that in December 2019, Plaintiff's treatment provider at Golden

Valley Health Care recorded Plaintiff's noncompliance with application of topical creams or icing for her feet, ankle, and gait pain. AT 1055-56. The ALJ also cited records from Plaintiff's pain management provider noting she was noncompliant with her prescribed care concerning her lumbar pain in January 2022. AT 1187. Noncompliance with a prescribed course of treatment is a permissible reason to discount Plaintiff's symptom testimony. *See Bunnell*, 947 F.2d at 346. Plaintiff did not specifically challenge the ALJ's findings on this point. *See Mata*, 2014 WL 5472784, at *4 (reminding that the court cannot manufacture arguments for the plaintiff on review).

The ALJ also cited Plaintiff's activities of daily living as a reason for discounting the more severe aspects of her testimony. AT 476. The ALJ noted multiple times when Plaintiff reported being able to perform tasks that contradicted her statements she "cannot do any of the [postural activities] checked," could not walk a block, had to rest 20-30 minutes between walks, could only sit and stand for fifteen minutes at a time, had to use a (non-prescribed) cane, and had to lie down more than fifty percent of the day. AT 42-54, 262-63. This included Plaintiff's reporting to Dr. Pingitore in March 2016 that she took walks with her boyfriend (AT 315-16); reporting to Dr. Van Kirk in May 2016 that she took the trash out, did the dishes and the laundry, and took walks outdoors (AT 320); reporting to Dr. Huynh in that her activities of daily living were "fine" in May 2021 (AT 883) and that she participated in chores and activities outside the home "with much less pain" in January 2022 (AT 1187); and reporting to Dr. Johnson-Schroetlin in June 2022 she had no limitations with daily self-care and was independent for basic activities of daily living (AT 1363). Contradictions between Plaintiff's symptom testimony and her actual activities of daily living is a permissible reason to discount Plaintiff's severely limiting symptom statements. *See Burch*, 400 F.3d at 680-81 (finding symptom statements contradicted by the plaintiff's ability to care for her personal needs, cook, clean and shop, interact with family and boyfriend, and noting that though these daily activities "may also admit of an interpretation more favorable to [the plaintiff], the ALJ's interpretation was rational" and must be upheld where susceptible to more than one

1  rational interpretation). Plaintiff did not explicitly challenge the ALJ's findings on this point
2  in her opening brief. *See Mata*, 2014 WL 5472784, at *4.

3      Finally, the ALJ did not wholly discount Plaintiff's symptom statements. The ALJ
4  did not deem Plaintiff able to perform any job in the national economy. Instead, the ALJ
5  found that Plaintiff was limited to light work, with many additional physical limitations
6  included in her residual functional capacity. AT 467-68, 477. Under the regulations,
7  Plaintiff's statements of subjective symptoms alone are insufficient grounds to establish
8  disability. 20 C.F.R §§ 404.1529(a), 416.929(a). The Court finds the ALJ provided
9  sufficiently specific reasons for discounting the more severe aspects of Plaintiff's
10 symptom testimony regarding her physical impairments, such that the Court does not
11 find Plaintiff's testimony was arbitrarily discredited. *See Brown-Hunter*, 806 F.3d at 493.

12            3.   Symptom Testimony re: Mental Impairments

13     Regarding Plaintiff's statements that she could not work due to her disabling
14 mental impairments, the ALJ began by summarizing Plaintiff's statements from her
15 disability reports and at the 2018 hearing. AT 468. In Plaintiff's 2017 disability reports,
16 she stated she "cannot do any of the things checked" and checked boxes for memory,
17 completing tasks, concentration, understanding, and following instructions. AT 262.
18 Plaintiff also stated she could not pay attention "that often," could not follow written or
19 spoken instructions "that well," "can't handle stress," and "can't deal with changes in
20 routine." AT 262-63. At the 2018 hearing, Plaintiff stated she has difficulty reading the
21 newspaper, could not write a grocery list without help, has daily panic attacks, and does
22 not visit public places. AT 42-54. The ALJ concluded the symptoms Plaintiff alleged
23 could be caused by her mental impairments, but "the intensity, persistence and limiting
24 effects of these symptoms are not entirely consistent with the medical evidence and
25 other evidence in the record for the above reasons." AT 476. Specifically, the ALJ found
26 Plaintiff's "allegations of generally disabling symptoms and limitations" to be
27 unsubstantiated by the evidence in the record, including "the consultative examinations,
28 the treatment history (reflecting no persistent neurological deficits and few significant

abnormalities in mental status examinations), [her] activities[,] the medical opinions[.]"
AT 476.

First, the ALJ properly noted the conflicts between Plaintiff's testimony and the objective medical evidence "as discussed." AT 468-76. The ALJ noted portions of Plaintiff's mental exam in January 2017 demonstrating mild and moderate limitations in the Paragraph B categories and consistent with simple and repetitive tasks (AT 337-38); normal affect in November 2017 (AT 406); normal cognition and average intelligence in March 2018 (AT 417); appropriate mood, no memory deficits, normal insight and judgment, normal attention and concentration in July 2020 (AT 1009); a May 2021 treatment record finding Plaintiff mentally "stable" (AT 883); a September 2021 treatment note with normal findings (AT 1162); "okay" mood and otherwise normal thought processes, unremarkable memory, and intact attention, concentration, insight, judgment, and impulse control in January and April 2022 (AT 1274, AT 1308); and the June 2022 exam results demonstrating Plaintiff had an adequate ability to abstract and normal presentation in many of her mental faculties (AT 1363-64). Further, as discussed above, Dr. Pingitore, Dr. Johnson-Schroetlin, LCSW Vigil, and the two stage-agency psychologists had many of these medical records available to them when opining on Plaintiff's mental limitations, and the ALJ ultimately assigned Paragraph B ratings and a residual functional capacity that aligned with the opinions of Drs. Pingitore, Ikawa, and Solomon. (*See* Section IV.A.3. above.)

The above evidence contradicts Plaintiff's statements that she had no ability to use her memory, complete tasks, concentrate, understand, follow instructions, not often pay attention, handle any stress or any changes in her routine, or visit public places. AT 42-54, 262-63. The ALJ could consider the objective medical evidence in resolving conflicts in Plaintiff's testimony, and could reject the more extreme portions of her testimony when in conflict with this evidence. *Rollins*, 261 F.3d at 857; *see also Tidwell v. Saul*, 836 F. App'x 523, 525-26 (9th Cir. 2020) (finding in part that medical evidence showing improvements in mental health "undercut such expansive limitations that it was

"impossible" to work around others, he had difficulties concentrating and was unable to follow instructions); *Gregg v. Astrue*, 2009 WL 3295117, at *4 (E.D. Wash. Oct. 13, 2009) (discounting the plaintiff's symptom testimony in part based on the medical evidence because it was not consistent with the plaintiff's broad assertions she could not work anymore due to worsening mental illness, nervousness around people, poor memory, inability to focus, and experience of panic attacks). The ALJ connected this evidence to her conclusions "as discussed," and was not required to re-summarize or repeat her seven-page summary of this evidence in her statement of her conclusions regarding Plaintiff's symptom testimony. *See Treichler*, 775 F.3d at 1099 (reminding that courts should not reverse if "the agency's path may reasonably be discerned," even if explained with "less-than-ideal clarity").

Plaintiff contends other evidence supports the more severe aspects of her symptom testimony, including exams showing her impaired ability to make decisions, presentation of anxiety, depression, and impaired decision making at appointments in January 2017, November 2017, March 2018, and July 2020. *See* AT 337-38, 406, 417, 1009. However, as noted above in the Court's analysis of the opinions from Dr. Johnson-Schroetlin, Dr. Cohen, LCSW Vigil, and Dr. Huynh, the ALJ considered this other evidence when resolving the conflicts in the record. *See* AT 470-73. As discussed above, the ALJ did not ignore the evidence cited by Plaintiff. *See Ghanim*, 763 F.3d at 1161. In fact, these and similar records were the basis for the ALJ's assignment of the mild and moderate limitations at step three and the limitation to simple and repetitive tasks. AT 468.

The ALJ also cited Plaintiff's activities of daily living, noting multiple times when Plaintiff reported being able to perform tasks that contradicted her symptom statements This included Plaintiff's reporting to Dr. Pingitore in March 2016 that she watches television with her boyfriend (AT 315-16); reporting to Dr. Pingitore she went out to restaurants with her father (AT 315-16); reporting to Dr. Huynh her "ADLs" were "fine" in May 2021 (AT 883) and that she participated in activities outside the home in January

1 | 2022 (AT 1187); and denying limitations with daily self-care and reporting of

2 | independence for her basic activities of daily living during her June 2022 exam with Dr.

3 | Johnson-Schroetlin (AT 1363). These are permissible reasons to discount Plaintiff's

4 | statements that she had a complete inability to use her memory, complete tasks,

5 | concentrate, understand, follow instructions, handle stress or changes in routine. AT

6 | 262-63. *See Molina*, 674 F.3d at 1113 ("Even where those activities suggest some

7 | difficulty functioning, they may be grounds for discrediting the claimant's testimony to the

8 | extent that they contradict claims of a totally debilitating impairment."); *Burch*, 400 F.3d

9 | at 680-81 (noting that though cited daily activities "may also admit of an interpretation

10 | more favorable to [the plaintiff], the ALJ's interpretation was rational" and must be upheld

11 | where susceptible to more than one rational interpretation). Plaintiff did not specifically

12 | challenge the ALJ's findings on this point in her opening brief. *See Mata*, 2014 WL

13 | 5472784, at *4.

14 | Finally, the ALJ did not wholly discount Plaintiff's symptom statements, such that

15 | she was deemed able to perform any job in the national economy. Plaintiff was found to

16 | be limited to light work with a restriction to simple and repetitive tasks, which is akin to

17 | Level 2 Reasoning. AT 468. Under the regulations, Plaintiff's statements of subjective

18 | symptoms alone are insufficient grounds to establish disability. 20 C.F.R §§ 404.1529(a),

19 | 416.929(a). The Court finds the ALJ provided sufficiently specific reasons for discounting

20 | the more severe aspects of Plaintiff's symptom testimony regarding her mental

21 | impairments, such that the Court does not find Plaintiff's testimony was arbitrarily

22 | discredited. *See Brown-Hunter*, 806 F.3d at 493.

23 | **V.**     **CONCLUSION**

24 | Having addressed all of the points of error raised by Plaintiff, the Court finds the

25 | ALJ's decision otherwise supported by substantial evidence in the record and free from

26 | legal error. *See* Ford, 950 F.3d at 1148 (noting that a district court may reverse only if

27 | the ALJ's decision "contains legal error or is not supported by substantial evidence").

28 | / / /

1

**ORDER**

2

      Accordingly, the Court ORDERS:

3

1.     Plaintiff's motion for summary judgment (ECF No. 11) is DENIED;

4

2.     The Commissioner's cross-motion (ECF No. 15) is GRANTED;

5

3.     The final decision of the Commissioner is AFFIRMED; and

6

4.     The Clerk of the Court is directed to CLOSE this case.

7

8

Dated:  September 20, 2024

9

 

CHI SOO KIM

10

UNITED STATES MAGISTRATE JUDGE

11

3, alex.1191

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28